Mariah J. Randolph, plaintiff in error, *vs.* Robert A. Fleming, defendant in error.

1. Accommodation indorser of a note payable, on its face, at a chartered bank, has a right to assume that it is intended for negotiation at such bank, unless otherwise informed, and is entitled to notice of non-payment.

2. Prepayment and acceptance of interest to a given time, on a note past due, is evidence of a contract for indulgence until the time has expired; and if no stipulation to the contrary appears, an unconditional contract will arise by implication.

Negotiable instruments. Banks. Evidence. Contracts. Interest. Before Judge Gibson. Richmond Superior Court. October Adjourned Term, 1877.

Mariah J. Randolph brought complaint against E. P. Clayton & Company, as makers, and Robert A. Fleming, as indorser, on a note dated September 18th, 1873, due sixty days after date, for $1,516.07, with interest at 13 per cent. per annum, payable at the Georgia Railroad and Banking Company, with the following credit thereon: "Received on the within note, $229.93, interest due to November 18th, 1874." To this action Fleming pleaded as follows:

1. The general issue.

2. That the note sued on was not presented for payment,

nor payment thereof demanded, at the Georgia Railroad and Banking Company on the day when the same was due, nor any notice of the non-payment of said note given to this defendant.

3. That after the maturity of said note, to-wit: on the 20th of October, 1874, or on a day between that and the 3d of November, 1874, the plaintiff, in consideration of the payment of interest in advance, agreed with the makers to extend the time of payment until the 18th of November, 1874, all of which was without the knowledge or consent of this defendant, who was simply an accommodation indorser.

4. That when said note was about to mature, the makers requested the plaintiff to send the same to the Georgia Railroad bank, at Augusta, where it was payable, stating that it would be paid, said makers being then solvent, which request the plaintiff did not regard, choosing rather to hold the note and receive interest thereon at a high rate; that they did so hold such note until the makers failed; that all of this was without the knowledge or consent of this defendant, who supposed the note had been paid at maturity.

The case was submitted to the court upon the following facts: There was neither a demand of payment, nor notice of non-payment given to the indorser. There was no evidence other than what is afforded by the face of the note, of any intention to negotiate, or to offer the note at any bank for discount. It could be proven, if such evidence were admissible, that there was no such intention on the part of plaintiff or of Clayton & Co., but that nothing was said to the indorser on that subject. He indorsed the note on the request of the makers, and did not inquire, nor was he told, whether it was meant to be negotiated at bank or not. The note was given for an amount of money which was in the hands of Clayton & Company as plaintiff's factors from the sale of her cotton, but this fact was not known to the indorser. At the time the note matured, the makers were paying all demands as presented. They have since

become insolvent, and have gone through bankruptcy. The credit on the note was made on November 4th, 1874. This payment was made at the request of plaintiff, and nothing was said either as to agreeing not to sue for any time whatever, nor as to reserving a right to sue. That question was not mentioned by either party. The indorser had supposed the note was paid until a short time before this suit was commenced. No one, however, had told him it was paid; it was only his supposition from the circumstances.

The court held the indorser not liable, and to this judgment plaintiff excepted.

R. Toombs; D. M. Dubose, for plaintiff in error.

W. H. Hull; J. Ganahl, for defendant.

Bleckley, Judge.

1. It is conceded that the note, on its face, was payable at a chartered bank, and that the indorser was an accommodation indorser. He was not informed, nor did he have reason to believe, that the note was not to be negotiated at the bank where it was payable. A purpose or intention to negotiate it there was inferable from the writing itself. 9 *Ga.* 305–6. As to parol evidence on such a question, see 4 *Ga.* 106; 30 *Ib.*, 271; 52 *Ib.*, 131; and compare these with 28 *Ga.*, 177. The indorser had a right to expect notice, and was entitled to have it. Code, §2781.

2. After the note became due, interest was accepted by the payee from the makers for a short period in advance. In the absence of express stipulation (and none took place) a contract for indulgence arose by implication, and the indorser was thus discharged. 37 *Ga.* 384.

Cited by counsel: (notice) Code §§2781, 2151, 3808; 4 *Ga.*, 106; 9 *Ib.*, 305; 28 *Ib.*, 177; 30 *Ib.*, 271; 33 *Ib.*, 491; 52 *Ib.*, 131; 44 *Ib.*, 63; 46 *Ib.*, 14; 53 *Ib.*, 493; (interest in advance—indulgence) Code, §2154; 37 *Ga.*, 384; 46 *Ib.*, 422; 3 Rich., 121; Holt N. P. 84.

Judgment affirmed.