# CASES

## DECIDED IN THE

# COURT OF APPEALS OF GEORGIA

### AT THE

## MARCH TERM, 1924

---

14674. HAYS *et al. v.* EDWARDS, administrator.

1. The ground of the motion for a new trial based on the exclusion of evidence "of the financial condition of the defendant A. N. Hays at the time of the execution of the note sued on" is not in proper form for consideration. "In order for the exclusion of oral testimony to be considered as a ground for a new trial, it must appear that a pertinent question was asked, and that the court ruled out the answer; and that a statement was made to the court at the time, showing what the answer would be; and that such testimony was material, and would have benefited the complaining party." *Griffin* v. *Henderson,* 117 *Ga.* 382 (2) (43 S. E. 712). Moreover, the record shows that evidence was admitted as to the financial condition of A. N. Hays.
2. For no reason assigned did the court err in directing a verdict for the plaintiff against A. N. Hays and A. S. Hays. Under the facts of the case the court erred in directing a verdict against W. M. and J. P. Hays.

DECIDED MARCH 6, 1924.

Complaint; from Newton superior court—Judge Hutcheson. April 14, 1923.

A. N. Hays was indebted to T. J. Edwards, and on February 28, 1914, gave to Edwards a note for $845.71, payable January 27, 1915, with interest at eight per cent. per annum from January 27, 1914. The note was signed also by A. S., J. P., and W. M. Hays. No interest thereon was paid prior to May 10, 1919, on which date A. N. Hays gave to Edwards a note for $420.67, due December 1, 1919, containing the recital: "This note given for interest on note held by T. J. Edwards for $845.71, dated Feb. 28, 1914." Edwards brought suit on the original note, returnable to the January term.

1922, of Newton superior court. A. N. Hays made no defense. A. S., J. P., and W. M. Hays filed a plea in which they alleged that they were sureties on the note sued on, and further pleaded that "after said defendants signed said note as security, the said T. J. Edwards accepted a note for [from] defendant A. N. Hays, the principal of said note, for the sum of $420.67 as interest on said note, without the knowledge or consent of these defendants, and subsequently paid some $220 of said interest note, and indulgence [was] given the defendant A. N. Hays for twelve months in consideration of said interest note and the payment thereon, and the indulgence granted by plaintiff was such an act as would injure defendants and increase their risk as such sureties and thereby discharge them." Upon the trial of the case, after the evidence was all submitted, the court directed a verdict against all the defendants. A motion for a new trial was made by the sureties. The motion was overruled, and they excepted.

*J. R. Irwin,* for plaintiff in error.

*A. D. Meador,* contra.

BLOODWORTH, J. (After stating the foregoing facts.) Only the second headnote needs elaboration.

A. N. Hays, the principal, filed no defense, admits his liability, and is not complaining of the judgment against him. A. S. Hays, one of the sureties, ratified the taking of the interest note by making a payment thereon. On the trial of the case the plaintiff swore: "Mr. Steve Hays (A. S.) paid me the money; paid it out of his own hand; yes, sir, and said he would pay the balance if Alf (A. N.) did not pay it. Alf has not paid me a cent on that note." Plaintiff also swore: "Steve Hays paid me two hundred and twenty odd dollars, and promised to pay the other if Alf did not pay it. He didn't object to this interest note being given. He knew about it." A. S. Hays testified: "I did make a payment, and got a receipt for it." This payment by A. S. Hays on the interest note was a ratification by him of the giving of the note by A. N. Hays and its acceptance by Edwards, and he is bound by it.

Were W. M. and J. P. Hays discharged by the plaintiff accepting the interest note? In order for a surety to be discharged because of increasing his risk by the extension of time granted to the principal without his consent, three things are necessary: (1) At the time the indulgence is granted the owner and holder must know that

the surety was such; (2) there must be a sufficient consideration; (3) the indulgence must be for a definite period. "It makes no difference for how short a period the time is extended, . . that period must be fixed." *Bunn* v. *Commercial Bank,* 98 *Ga.* 650 (26 S. E. 64). We will discuss the above propositions in the order named.

The evidence clearly shows that the plaintiff knew, when W. M. and J. P. Hays signed the note, that they did so as sureties. It also shows that neither of these two sureties knew anything of the interest note being given when it was executed, and that they never agreed to it or ratified it in any way.

Was there a consideration for the indulgence granted to the principal? Mr. A. N. Hays swore that the payee of the interest note, Mr. Edwards, "extended the time in consideration of him giving this interest note." A calculation of the interest on the original note at eight per cent. from January 27, 1914, the date from which it bears interest, to December 1, 1919, the date of the maturity of the interest note, will show that the amount of the interest note is more than the legal interest to that time would be. It will be noted that the interest note was given some time after the maturity of the principal note. The acceptance of the interest note by the plaintiff amounted to a payment of the interest embodied therein. If we treat this note as embracing interest only to the date of the maturity of the note, then it is for more than the legal interest, is usurious, and the legal effect of taking this note would be to discharge the surety. The headnote in *Knight* v. *Hawkins,* 93 *Ga.* 709 (20 S. E. 266), is as follows: "Where the holder of a past-due promissory note, in consideration of the prepayment in advance of usurious interest by the maker, extends the time of payment without the knowledge or consent of the surety, the latter is discharged, the creditor, at the time of granting the indulgence, knowing the fact of suretyship." In *Camp* v. *Howell,* 37 *Ga.* 319, Judge Walker said: "The plaintiff contracted to give time in consideration of the promise of legal interest on his debt, and the usurious interest promised to be paid him; and this, without the consent of the surety, discharged the surety. The case of *Stallings* v. *Johnson,* 27 *Ga. R.* 564, fully sustains the court below in holding that the contract to give time was sufficient to discharge the surety; provided, the plaintiff, at the time of making it, knew that Camp was surety." See also *Owens* v. *Palmour,* 99 *Ga.* 92 (24 S. E. 859); *Clark* v.

*Brice,* 64 *Ga.* 486 (2). If we treat this note as embracing only legal interest, it would pay the interest on the original note beyond its maturity, and this would be interest in advance. In the *Knight* case, supra, it was said: "Even the prepayment in advance of legal interest on a debt is of itself sufficient to work the discharge of a surety. 2 Brandt, Suretyship, § 352. The precise question made in the case at bar was decided by this court in the case of *Scott* v. *Saffold,* 37 *Ga.* 384, in which it was held, under similar facts, that the surety was discharged. Again, in *Randolph* v. *Fleming,* 59 *Ga.* 776, it was held that where, after a note became due, interest was accepted by the payee from the makers for a short period in advance, a contract for indulgence arose by implication, and an indorser on the note was discharged. See also *Parmelee* v. *Williams,* 72 *Ga.* 42." "After the note became due, interest was accepted by the payee from the makers for a short period in advance. In the absence of express stipulation (and none took place) a contract for indulgence arose by implication, and the indorser was thus discharged." See also *Tanner* v. *Gude,* 100 *Ga.* 157 (27 S. E. 938).

Was the indulgence for a definite period? Yes, until December 1, 1919, the date of the maturity of the interest note. In *Randolph* v. *Fleming,* 59 *Ga.* 777 (2), the Supreme Court held: "Prepayment and acceptance of interest to a given time, on a note past due, is evidence of a contract for indulgence until the time has expired; and if no stipulation to the contrary appears, an unconditional contract will arise by implication." "No stipulation to the contrary appears" in the note which we are discussing. In *Scott* v. *Saffold,* 37 *Ga.* 391, it is said: "The very idea of payment in advance presupposes that delay of the payment of the principal is to be given for the time. The payment of the interest is the consideration for an agreement implied from the transaction itself if not distinctly expressed, to give time on the principal. The general rule is that the reception of interest in advance upon a note is prima facie evidence of a binding contract to forbear and delay the time of payment; and no suit can be maintained against the maker during the period for which the interest has been paid, unless the right to sue be reserved by the agreement of the parties." From the foregoing it will be seen that the payee of the original note not only tied his own hands and could not sue before the maturity of the interest note, but also placed the sureties where they could not

themselves pay the original note and bring suit thereon; thus depriving them of a right which they would otherwise have. This is such conduct on the part of the principal as discharges the sureties W. M. and J. P. Hays.

*Judgment affirmed as to A. N. and A. S. Hays; reversed as to W. M. and J. P. Hays. Broyles, C. J., and Luke, J., concur.*